Jimmie R. RACHAL, Plaintiff-Appellee, Cross-Appellant,

v.

INGRAM CORPORATION, Defendant-Appellant, Cross-Appellee.

No. 85–4430.

United States Court of Appeals, Fifth Circuit.

Aug. 4, 1986.

---

James E. Diaz, Sr., Frank H. Spuiell, Jr., Lafayette, La., for defendant-appellant, cross-appellee.

Leonard Fuhrer, John E. Morton, Alexandria, La., for plaintiff-appellee, cross-appellant.

Before JOLLY and HILL, Circuit Judges, and HUNTER,* District Judge.

E. GRADY JOLLY, Circuit Judge:

Rachal filed a complaint alleging a Jones Act claim and general maritime claims. He demanded a jury trial. Rachal later amended his complaint to state an action only in admiralty, an amendment that eliminated his right to a jury trial. In a ruling on a motion to clarify the issue of jury trial, the district court allowed Rachal to strike his earlier jury demand over the objection of the defendant, Ingram, who asserted that the court's action violated his right to a jury trial under Rules 38 and 39 of the Federal Rules of Civil Procedure. After a bench trial, the district court held Rachal twenty-five percent negligent, and Ingram seventy-five percent negligent, and granted Rachal damages. The issue presented on appeal is whether the district court erred in allowing Rachal to withdraw his jury demand when Ingram insisted on its right to a jury trial. Ingram also appeals the district court's apportionment of negligence.

* District Judge of the Western District of Louisiana, sitting by designation.

## I

Rachal worked as a rigger on the PIPEL-INER III, a dumb lay barge used by Ingram to lay offshore pipelines. Rachal hurt his knee while the PIPELINER III was in port for repairs to a crane boom. Rachal testified that he jumped off the boom, slipped in some oil or diesel fuel, and injured his left knee.

In July 1983, Rachal filed a complaint against Ingram Corporation, his employer, and A & P Boat Rentals, who had transported Rachal to shore after his injury. On the cover sheet of his complaint, Rachal identified his action as: "Seaman's Complaint for Damages and Maintenance and Cure under the Jones Act (45 U.S.C. 688) and the General Maritime Law as an Action in Admiralty under F.R.C.P. Rule 9(h)." In contradiction to his purported election under Rule 9(h), he demanded a jury trial on the cover sheet to the complaint. The complaint itself contained most of the statement on the cover sheet, but it ended after "Law" and therefore did not specify that the action was in admiralty pursuant to the plaintiff's election under Rule 9(h). The complaint, however, demanded a jury trial. In its answer, Ingram denied Rachal's right to a jury trial. The clerk placed the case on the jury trial docket.

About a year later, Rachal filed a supplemental and amended complaint that made no mention of jury trial, but clearly specified that Rachal was now stating an action in admiralty under Rule 9(h). In its answer, Ingram generally denied the allegations of the amended complaint, including paragraphs alleging the plaintiff's admiralty action. Sometime later, a pretrial order providing for a nonjury trial was filed. Nevertheless, in its minute entry, the district court noted that Ingram was given additional time to consider whether to request a jury trial.

Shortly thereafter, Ingram informed the district court by letter that it was asserting its right to a jury trial. Rachal then filed a motion to strike his jury demand. The district court granted the motion to strike, holding that Rachal could properly amend his complaint under Fed.R.Civ.P. 15(a) without obtaining the defendant's consent under Fed.R.Civ.P. 39(a). *Rachal v. Ingram Corp.*, 600 F.Supp. 406 (W.D.La. 1984).

Three months later, all parties moved to dismiss A & P Boat Rentals, pursuant to a settlement with Rachal. This dismissal created diversity jurisdiction.

The district court held a bench trial and determined that Rachal was twenty-five percent negligent and Ingram was seventy-five percent negligent. After the appropriate deduction for Rachal's negligence, the district court held Ingram liable for $292,-717 plus interest and costs. Both parties appealed.

## II

Ingram acknowledges, of course, that the Jones Act gives only the plaintiff the right to choose a jury trial. Ingram contends, however, that the seventh amendment protects its right to jury trial once Rachal initially demanded it. Ingram, however, primarily rests its appeal squarely on the shoulders of *Johnson v. Penrod Drilling Co.*, 469 F.2d 897 (5th Cir.1972), *reh'g granted*, 478 F.2d 1208 (5th Cir.1973), *on reh'g*, 510 F.2d 234 (5th Cir.1975), *cert. denied*, 423 U.S. 839, 96 S.Ct. 68, 46 L.Ed.2d 58 (1975), *overruled on other grounds, Culver v. Slater Boat Co.*, 688 F.2d 280 (5th Cir.1982) (en banc).[1] In *Johnson*, we held that the district court erred when it denied a Jones Act defendant the right to a jury trial that the plaintiff had originally demanded, but had later withdrawn. According to Ingram, *Johnson* established that, under Rule 39(a) and the

---

1. The district court held that *Johnson* did not apply to the case before us because diversity jurisdiction was present in *Johnson* in addition to Jones Act and general maritime jurisdiction, while only Jones Act and general maritime jurisdiction were present in this case when the district court ruled on the issue of jury trial. Consequently, the district court held that the defendant had no right to a jury trial.

seventh amendment, a defendant has the right to a jury trial after the Jones Act plaintiff demands a trial by jury in a civil action.

Ingram also contests the sufficiency of the evidence to support the finding that Ingram was seventy-five percent negligent. According to Ingram, the district court clearly erred when it held that the preponderance of the evidence supported Rachal's version of the facts.

We now turn to Rachal's argument. He first argues that he actually elected an action in admiralty in his original complaint, by describing it on the cover sheet as one in admiralty. Even if the cover sheet did not establish the action as one in admiralty, however, Rachal argues that only the plaintiff-seaman can elect a jury trial under Rule 9(h) and the Jones Act, and, the right belonging only to him, the district court correctly allowed him to withdraw his jury demand. Rachal distinguishes the result in *Johnson* on the basis that diversity jurisdiction in that case gave the defendants an additional right to a jury trial not present here. Rachal therefore concludes that the court did not violate the provisions of Rule 39(a) when it struck the jury demand.

On cross-appeal, Rachal contends that the district court erred when it attributed twenty-five percent negligence to him. According to Rachal, he clearly satisfied the minimal burden of care that a seaman is expected to exert to protect himself. .

## III

The most difficult issue we must decide is whether the district court erred when it allowed the plaintiff to amend his complaint and withdraw the jury demand. In order to decide this issue, we must consider the seventh amendment, the Jones Act and the Federal Rules of Civil Procedure.

## IV

### A.

We first address Ingram's contention that the seventh amendment protects its right to a jury trial once Rachal initially demanded it. The seventh amendment preserves the right to a jury trial basically as it existed at common law. The right to a jury trial, however, has been extended by the courts to some areas where the common law would have found jury trials novel. This extension results from the expansion of legal remedies, which has reduced the number of causes of action where only equitable remedies are available. *Ross v. Bernhard,* 396 U.S. 531, 539–40, 90 S.Ct. 733, 738–39, 24 L.Ed.2d 729 (1970); *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 478, 82 S.Ct. 894, 900, 8 L.Ed.2d 44 (1962); *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 509, 79 S.Ct. 948, 955, 3 L.Ed.2d 988 (1959).

Nevertheless, neither the common law nor its more adequate modern remedies is the source of the right to a jury trial here. In a nondiversity action under the Jones Act, 46 U.S.C. § 688, the seaman, on proper request, is entitled to a jury trial only by virtue of the Jones Act statutory grant. *Fitzgerald v. United States Lines,* 374 U.S. 16, 21, 83 S.Ct. 1646, 1650, 10 L.Ed.2d 720 (1963). When non-jury admiralty claims are joined in the same action, they are treated as pendent to the Jones Act claim, and are tried together for convenience. *Id.* at 19–20, 83 S.Ct. at 1649–50.

When there is diversity jurisdiction in Jones Act cases, both parties have an independent basis for a jury trial *if* the plaintiff has chosen to pursue his Jones Act claim through the "saving to suitors" clause in a civil action.[2] *Harrison v. Flota Mercante Grancolombiana, S.A.,* 577 F.2d 968, 986 (5th Cir.1978); 28 U.S.C. § 1333. Because there was no diversity here, however, Rachal's *only* right to a jury trial arose under the Jones Act.

**2.** The "saving to suitors" clause in 28 U.S.C. § 1333 provides: "The district courts shall have original jurisdiction, exclusive of the courts of the States, of [a]ny civil case of admiralty or

maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."

Because there was no diversity, Ingram similarly had no right to a jury trial. Any jury trial right that Ingram may have arose only because Rachal demanded a jury trial; Ingram may insist on a jury trial only to the extent that Rachal is prohibited by the Federal Rules of Civil Procedure from withdrawing his jury demand. The seventh amendment therefore is not involved in this case.

### B.

■ Against this backdrop, we turn to consider whether the district court erred when it allowed Rachal to amend his complaint to elect an admiralty action and granted his motion to strike his jury demand.[3] For our solution, we must examine Rules 9(h), 15(a), 38 and 39(a) of the Federal Rules of Civil Procedure, and the Jones Act, and apply each of them harmoniously to this case.

Because the defendants had already served their responsive pleadings well before Rachal sought to amend his complaint, Rachal could only amend with their consent or by leave of court. Fed.R.Civ.P. 15(a). The district court gave its leave the same day that Rachal sought amendment, August 28, 1984, and again when it granted

Rachal's motion to strike the jury demand. Consequently, Rachal fully satisfied Rule 15's requirements to amend.

The district court could still have erred, though, if in allowing amendment and in granting the motion to strike the jury trial demand, it abused its discretion by infringing on jury trial rights preserved in Rules 38 and 39(a).

■ Rule 38(a) provides that the right to jury trial shall be preserved as given by the seventh amendment and the statutes of the United States. Other provisions of the Federal Rules, however, clearly establish that the Federal Rules should not be interpreted to expand the right to jury trial beyond constitutional or statutory grants, especially in admiralty. Fed.R.Civ.P. 38(e);[4] Fed.R.Civ.P. 9 advisory committee note; see also 28 U.S.C. § 2072 (Supreme Court's rule-making power shall *preserve* the right of trial by jury).

Rule 38(b) provides a procedure for demanding a jury trial. Rule 38(d) construes the failure to demand a jury trial as a waiver of that right, but allows other parties to rely on one party's demand by providing that a proper demand can only be withdrawn with the consent of the parties.[5]

---

3. Rachal also argued that he initially elected to proceed in admiralty in his complaint and its cover sheet, and that therefore the withdrawal of the jury demand was not actually necessary. Rachal cannot rely on the cover sheet he prepared to interpret the complaint under the Federal Rules. *See Pinemont Bank v. Belk,* 722 F.2d 232 (5th Cir.1984); *Cochran v. Birkel,* 651 F.2d 1219 (6th Cir.1981), *cert. denied,* 454 U.S. 1152, 102 S.Ct. 1020, 71 L.Ed.2d 307 (1982) (checking "jury demanded" on civil cover sheet does not demand jury under Rule 38), *cited with approval* in *Houston North Hospital Properties, Inc. v. Telco Leasing, Inc.,* 688 F.2d 408, 410 (5th Cir. 1982). Nor does any local rule allow for consideration of the cover sheet.

The complaint itself did not elect a proceeding in admiralty. It did not mention Rule 9(h). It ambiguously stated an action under the Jones Act and general maritime law. When read together with the jury demand, however, the complaint clearly states a civil action at law. *Cf. Romero v. Bethlehem Steel Corp.,* 515 F.2d 1249 (5th Cir.1975) (*complaint* that elected admiralty *under rule 9(h)* and asked for jury states action in admiralty).

4. Fed.R.Civ.P. 38(e) provides, "These rules shall not be construed to create a right to trial by jury of the issues in an admiralty or maritime claim within the meaning of Rule 9(h)."

5. Rule 38 reads:
   (a) Right Preserved. The right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate.
   (b) Demand. Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue. Such demand may be indorsed upon a pleading of the party.
   (c) Same: Specification of Issues. In his demand a party may specify the issues which he wishes so tried; otherwise he shall be deemed to have demanded trial by jury for all the issues so triable. If he has demanded trial by jury for only some of the issues, any other

Rule 39(a) defines the protection provided by Rule 38(d); Rule 39(a)(1) requires consent, and provides the procedure for consensual withdrawal of a jury demand, and Rule 39(a)(2) grants the court the authority to take a case off the jury docket when no right to a jury trial exists.[6] Rule 39(a) therefore specifically protects the party who, relying on another party's jury demand, waives his own right by not demanding a jury.

As we have noted, the Jones Act gives only the seaman-plaintiff the right to choose a jury trial. 46 U.S.C. § 688. With certain exceptions that are not involved here,[7] a plaintiff has the right to select either an admiralty or a legal forum under the saving to suitors clause. 28 U.S.C. § 1333. The Federal Rules preserve this right by allowing the plaintiff to designate his action as one in admiralty or to treat it as a civil action. Fed.R.Civ.P. 9(h).

■ Thus, Rule 39(a) does not absolutely preclude a Jones Act plaintiff from withdrawing a jury demand earlier made; it conditions the withdrawal of a jury demand on certain protections of the defendant's rights. Neither does Rule 39 grant the defendant here any new or independent right to a jury trial; it simply protects rights to a jury trial that the defendant may have been granted elsewhere.

With this understanding of the relevant Federal Rules, we turn to the case upon which Ingram relies, *Johnson v. Penrod Drilling Co.*, 469 F.2d 897 (5th Cir.1972), which indeed is the case most closely on point. *Johnson* involved two actions for maritime personal injury against a common defendant, two cases consolidated on appeal because they presented a common legal issue. The plaintiffs had filed actions against Penrod alleging diversity and Jones Act jurisdiction. Jury trials were demanded. Later, the plaintiffs amended their complaints to elect an admiralty action and made no demand for a jury trial. Penrod then moved for a jury trial in the respective cases, arguing in each case that it had not consented to the plaintiff's withdrawal of the demand.

The *Johnson* court framed the issue before it as follows: "Could the plaintiffs, through the device of amending their complaints to state admiralty and maritime claims under Rule 9(h), effectively withdraw their demands for jury trials without compliance with the specific procedures set forth in Rule 39(a) for the withdrawal of such demands?" *Johnson*, 469 F.2d at 902. The issue in the case before us may be stated similarly.

The plaintiffs in *Johnson* argued that they could withdraw their jury demand without complying with Rule 39(a) because an amendment to replead a claim as one in admiralty should be freely allowed under Rule 15. Penrod relied upon the text of Rule 39(a).

The *Johnson* court resolved the issue in Penrod's favor, stating:

Rule 38 unhesitatingly affirms that the Seventh Amendment's guarantee of the right to trial by jury in federal civil cases "shall be preserved to the parties inviolate." Rule 38(a), *supra*. The procedure

---

party within 10 days after service of the demand or such lesser time as the court may order, may serve a demand for trial by jury of any other or all of the issues of fact in the action.

(d) Waiver. The failure of a party to serve a demand as required by this rule and to file it as required by Rule 5(d) constitutes a waiver by him of trial by jury. A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties.

6. Rule 39(a) states in pertinent part:

The trial of all issues so demanded shall be by jury, unless (1) the parties or their attorneys of record, by written stipulation filed

with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury or (2) the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist under the Constitution or statutes of the United States.

7. The Limitation Act, 49 Stat. 960, 46 U.S.C. §§ 183, 185, gives shipowners in certain circumstances the right to transfer to admiralty a civil action filed under the saving to suitors clause. G. Gilmore & C. Black, *The Law of Admiralty* §§ 10–4, 10–19 (2d ed. 1975).

set forth in Rule 39(a) for transferring an action from a district court's jury docket to its nonjury docket gives explicit recognition to the quasi-constitutional privilege of the party who did not originally demand trial by jury to rely upon the jury trial demand made by the adverse party. We therefore hold that the district court erred when it transferred these two actions from its jury docket to its nonjury docket without first obtaining Penrod's Rule 39(a) consent to the transfers because the two transfers constituted violations of Penrod's Seventh Amendment right to trial by jury.

*Id.* at 903.

There is an important distinction between *Johnson* and the case before us today, however: the *Johnson* plaintiffs alleged diversity jurisdiction as well as Jones Act jurisdiction, while here Rachal has asserted only admiralty and Jones Act jurisdiction.

The presence of diversity jurisdiction in *Johnson* influenced that case in several ways. First, the *Johnson* court relied on the seventh amendment in its analysis, and diversity jurisdiction was the only possible connection to a seventh amendment right to jury trial in *Johnson*. The right to a jury trial under the Jones Act is a statutory right. Of course, it is uncontested that admiralty jurisdiction gives no right to a jury trial. *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959) (admiralty does not fall under "federal question" jurisdiction, 28 U.S.C. § 1331, which would give jury right); *Bethlehem Steel Corp.*, 515 F.2d at 1252–54 (Rule 9(h) election of admiralty means no right to jury trial).

■ Second, as we have noted, Rule 39(a) grants no independent right to a jury trial. In *Johnson*, diversity provided an independent constitutional basis for Penrod's claim to a jury.[8] In *Johnson*, there-

fore the plaintiffs could not ignore Rule 39(a) because the district court was precluded from finding that a right to jury trial did not exist "under the Constitution or statutes of the United States." As the advisory committee notes to Rule 9 make clear, however, once the plaintiff pleads his case in admiralty, by a properly allowed amendment or otherwise, the federal court sits in admiralty and no party has the right to a jury trial, regardless of diversity jurisdiction. "For example, a longshoreman's[9] claim for personal injuries suffered by reason of the unseaworthiness of a vessel may be asserted in a suit in admiralty or, *if diversity of citizenship exists*, in a civil action. One of the most important procedural consequences is that in the civil action *either party* may demand a jury trial, while in the suit in admiralty there is no right to jury trial except as provided by statute." Fed.R.Civ.P. 9 advisory committee note (emphasis added).

In *Johnson* the causes of action under the Jones Act were initially pleaded as civil actions, not admiralty actions. Thus, when the plaintiffs demanded jury trials, the defendant Penrod enjoyed the constitutional right to a trial by jury through diversity and, as it was a civil action, could have properly demanded a jury trial in its answer. Penrod, however, as it was entitled to do, relied on the plaintiffs' demands for a jury. Thus, under Rule 39(a), the district court was powerless to remove the case to the nonjury calendar without Penrod's consent, because the defendant Penrod had a constitutional right to a jury trial.

The *Johnson* court therefore applied Rule 39(a) to preclude the plaintiffs from overriding Penrod's constitutional right to a jury trial, a right that Penrod had not exercised because it had relied on the plaintiffs' demand. As the *Johnson* court said, "The procedure set forth in Rule 39(a) for

---

8. We, like Penrod, refer to diversity as the basis for the right to a jury trial. Of course, the basis is really the seventh amendment; diversity only provides the basis for jurisdiction. *Johnson v. Venezuelan S.S. Line*, 314 F.Supp. 1403, 1405–07 (1970).

9. A longshoreman can no longer recover for unseaworthiness. Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972, 33 U.S.C. §§ 901, *et seq.* (also incorporating other changes).

transferring an action from a district court's jury docket to its nonjury docket gives explicit recognition to the quasi-constitutional privilege of the party who did not originally demand trial by jury to rely upon the jury trial demand made by the adverse party." Despite its choice of language,[10] therefore, the *Johnson* court clearly applied Rule 39(a) to protect the defendant's existing right to a jury trial, conferred through diversity and through the plaintiffs' choice of a civil action when they filed their initial complaints.

■ In this case, however, when the initial complaint was filed and the plaintiff chose a civil action, the only right to a jury trial belonged to the plaintiff under the Jones Act. If Rule 39(a) were applied to preclude the plaintiff from withdrawing his jury demand and proceeding in admiralty under the Jones Act, the defendant here would be granted the right to a jury based solely on the provisions of Rule 39(a). As we have noted, Rule 39(a) does not create the right to a jury, but rather preserves a right established by some other source.

We hasten to add, however, that we can imagine circumstances in which the district court would not be abusing its discretion under Rule 15 if it refused to allow an amendment electing admiralty. For instance, the plaintiff may not be permitted to "ambush" the defendant by amending shortly before trial. In this case, however, the district court held trial about three months after it struck the jury demand and about six months after it granted leave to proceed in admiralty. We hold that the district court did not abuse its discretion in this case when it granted leave to amend and when it struck the jury demand.[11]

■ Ingram also contends that it was entitled to a jury because the voluntary dismissal of the other defendant created diversity about two months after the district court allowed the amendment to proceed in admiralty and struck the jury demand. Alas, this appearance of diversity came too late for Ingram. The district court had already properly allowed the amended complaint electing admiralty, and thus was sitting as a court of admiralty when diversity arose in this case. Since the court was sitting in admiralty, there was no right to a jury trial, irrespective of diversity. *See Fisher v. Danos*, 671 F.2d 904, 906 (5th Cir.), *cert. denied*, 459 U.S. 840, 103 S.Ct. 89, 74 L.Ed.2d 83 (1982), *aff'd after remand*, 774 F.2d 1158 (5th Cir.1985).

V

Both sides have contended that the district court clearly erred in attributing any negligence to them. After a careful review of the record, we hold that the district court was not clearly erroneous. The district court heard testimony that conflicted on almost every issue in the case, major or minor, and the district court could have chosen either version. The district court resolved those conflicts, however, by crediting the plaintiff's case more than the defense, and it apportioned only twenty-five percent fault against the plaintiff. We cannot say this was error. *Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 1511–13, 84 L.Ed.2d 518 (1985).

Similarly, the district court did not clearly err in refusing to award Rachal the value of the fringe benefits he claimed he

---

**10.** If there is such a species as a "quasi-constitutional privilege," it is not involved in *Johnson*. After the plaintiffs requested a civil action, Penrod had a constitutional right through diversity to a jury trial. That constitutional right is protected by the procedure of Rule 39(a).

**11.** This case took procedural twists that may not occur in future cases. A case such as this should ordinarily be decided by the district court pursuant to a Rule 15 motion, rather than a motion to strike a jury demand. The plaintiff, as the plaintiff here did initially, should move to amend his complaint from a civil action to allege an admiralty action. The disposition of such a motion, of course, implicates Rule 39(a). If the district court finds that the party opposing amendment has no statutory or constitutional right to a jury trial, then the motion, absent other factors, should ordinarily be granted. If the court finds that the party opposing has a statutory or constitutional right to a jury trial, the motion should ordinarily be denied as barred by Rules 38 and 39(a)(2).

received. The evidence of their existence was unclear, and the district court was not clearly erroneous in denying damages for their loss. Finally, the district court properly subtracted FICA taxes under *Madore v. Ingram Tank Ships, Inc.*, 732 F.2d 475, 479 (5th Cir.1984).

## VI

For the foregoing reasons, the judgment of the district court is

AFFIRMED.