**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROSS DRESS FOR LESS, INC., a
Delaware corporation,
*Plaintiff-Counter-Defendant-Appellant*,

v.

MAKARIOS-OREGON, LLC, an
Oregon limited liability company,
*Defendant-Counter-Claimant-Appellee*,

and

WALKER PLACE, LLC, an Oregon
limited liability company; CHARLES
W. CALOMARIS; KATHERINE
CALOMIRIS TOMPROS; JENNIFER
CALOMIRIS,
*Defendants*.

No. 21-35106

D.C. No.
3:14-cv-01971-SI

ROSS DRESS FOR LESS, INC., a
Delaware corporation,
*Plaintiff-Counter-Defendant-*
*Appellee*,

v.

WALKER PLACE, LLC, an Oregon
limited liability company,
*Defendant*,

and

CHARLES W. CALOMARIS;
KATHERINE CALOMIRIS TOMPROS;
JENNIFER CALOMIRIS,
*Defendants-Appellants*,

MAKARIOS-OREGON, LLC, an
Oregon limited liability company,
*Defendant-Counter-Claimant-*
*Appellant.*

No. 21-35132

D.C. No.
3:14-cv-01971-SI

OPINION

Appeal from the United States District Court
for the District of Oregon
Michael H. Simon, District Judge, Presiding

Argued and Submitted May 10, 2022
Portland, Oregon

Filed July 8, 2022

Before:  Richard C. Tallman and Morgan Christen, Circuit Judges, and Frederic Block,[*] District Judge.

Opinion by Judge Christen

## SUMMARY[**]

### Jury Trial

The panel affirmed the district court's ruling granting defendant-appellee Makarios-Oregon, LLC's motion to withdraw its demand for a jury trial in a diversity action involving the parties' lease obligations.

Plaintiff Ross Dress for Less, Inc. sued Makarios seeking declaratory relief regarding its end-of-lease obligations in connection with Ross's lease of the Richmond Building, as to which Makarios had received an assignment of rights and thereafter acted as Ross's landlord.  Makarios filed counterclaims against Ross and demanded a jury trial on its counterclaims.  In January 2016, Ross filed a document waiving its right to a jury trial under Fed. R. Civ. P. 38.  In November 2018, Makarios moved to withdraw its jury demand.  Ross argued it was entitled to rely on Makarios's request for a jury. Makarios argued that because Ross waived its right to a jury when it entered into the Richmond Building

---

[*] The Honorable Frederic Block, United States District Judge for the Eastern District of New York, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

lease, Ross could not object to Makarios's withdrawal of its jury demand or to take advantage of the general rule that parties must consent to a bench trial after a proper jury demand is made. The district court held a four-day Phase II bench trial and entered judgment in favor of Makarios.

Fed. R. Civ. P. 38(d) provides that a proper jury trial demand "may be withdrawn only if the parties consent." Fed. R. Civ. P. 39 requires trial by jury "on all issues demanded" unless the parties stipulate or the "court, on motion, or on its own, finds that on some or all of those issues there is no federal right to a jury trial."

Because jurisdiction in the district court was based on diversity of citizenship, Oregon substantive law and federal procedural law governed.

Ross contended that the district court erred by allowing Makarios to unilaterally withdraw its demand for a jury trial because Fed. R. Civ. P. 38(d) and 39(a) required Ross's consent. Neither party argued that the waiver in Section 13.04 of the lease was unknowing or involuntary, but the parties disagreed on the scope of the provisions. First, applying Oregon law, the panel held that the ordinary meaning of Section 13.04 was clear and it established that Ross waived its right to a jury trial on counterclaims filed by Makarios. The panel affirmed the district court's ruling as to waiver. Second, the panel rejected Ross's argument that even if it contractually waived its jury trial right, it was still entitled to rely on Makarios's jury demand under Rules 38(d) and 39(a). The panel affirmed the district court's conclusion that Rules 38 and 39 did not apply because Ross had no right to a jury trial by virtue of its waiver in Section 13.04 of its lease. The panel held that typically, the combination of Rules

38(d) and 39(a) prevents a party from unilaterally withdrawing its jury demand, even when no other party has requested a jury trial. Although the right to rely on another party's jury demand is not unlimited, the exceptions to the Rules did not apply here.

The panel resolved the bulk of the issues on appeal in a concurrently filed memorandum disposition.

## COUNSEL

Gregory D. Call (argued) and Tracy E. Reichmuth, Crowell & Moring LLP, San Francisco, California; Joel A. Parker, Rebecca Boyette, and Sara Kobak, Schwabe Williamson & Wyatt PC, Portland, Oregon; for Plaintiff-Counter-Defendant-Appellant/Cross-Appellee.

Molly K. Honoré (argued), Paul S. Bierly, and Jeffrey M. Edelson, Markowitz Herbold PC, Portland, Oregon, for Defendant-Counter-Claimant-Appellee/Cross-Appellant.

**OPINION**

CHRISTEN, Circuit Judge:

Plaintiff-appellant Ross Dress for Less, Inc. appeals the district court's ruling granting defendant-appellee Makarios-Oregon, LLC's motion to withdraw its demand for a jury trial. Ross argues the district court erred because Federal Rules of Civil Procedure 38 and 39 generally allow a party to rely on another party's jury demand without having to file its own demand. Ross further argues that the Rules require that parties consent before the court may conduct a bench trial if a proper jury demand has been made. Because Ross waived its right to a jury trial in its lease with Makarios, we affirm the district court's ruling.

I

This appeal arises from Ross's lease of the Richmond Building, a five-story property located at 600 SW Fifth Avenue in Portland, Oregon. The basement, first floor, and second floor of the Richmond Building are connected by concrete slabs to the same floors of the adjacent Failing Building, a twelve-story structure on the National Register of Historic Places. In September 1996, Ross assumed all rights in the leases for the Richmond and Failing Buildings. Ross's lease for both buildings expired on September 30, 2016. From 1986 to 2017, the Calomiris family owned the Richmond Building. Makarios-Oregon is an entity associated with the Calomiris family. Makarios received an assignment of all rights to the lease of the Richmond Building in 2011, and thereafter acted as Ross's landlord.

The lease for the Richmond Building was a "triple-net lease," meaning Ross, as tenant, was responsible for all taxes, insurance, and other expenses related to the building's operation, maintenance, and repair. Ross paid $34,000 annually in rent for the entirety of its lease. Four provisions of the lease are at the center of the parties' dispute. Two governed Ross's end-of-lease obligations: Section 16.01 required Ross to surrender the property "in good order, condition, and repair, except for reasonable wear and tear," and Section 16.02 required Ross to "make such alterations to the building then erected on the demised premises as . . . necessary to constitute such building an entirely independent and self-sufficient structure." The other two provisions are relevant to the jury demand issue. Section 13.04 of the lease provided that "[t]he Tenant waives all right to trial by jury in any summary or other judicial proceedings hereafter instituted by the Landlord against the Tenant in respect to the demised premises." Section 26.01 stated that "the terms, conditions, covenants, provisions and agreements herein contained shall be binding upon and inure to the benefit of the Landlord, its successors and assigns, and the Tenant, its successors and assigns."

In December 2014, Ross sued Makarios and then-owner of the Failing Building, Walker Place, in the United States District Court for the District of Oregon seeking declaratory relief regarding its end-of-lease obligations for the Richmond and Failing Buildings. Ross asked the district court for a declaratory judgment establishing that: (1) Ross was only obligated to perform the work necessary to physically separate the Richmond and Failing Buildings; (2) the work Ross proposed to Makarios and Walker Place was sufficient to satisfy its lease obligations; (3) Ross was not obligated to perform additional work demanded by the landlords; and

(4) the landlords could not withhold consent to Ross's proposed plans. Ross's complaint also demanded a jury trial.

Both defendants filed counterclaims against Ross alleging breach of contract and requesting a declaratory judgment regarding Ross's end-of-lease obligations. Makarios demanded a jury trial on its counterclaims. The parties agreed to bifurcate the case into two phases: in Phase I, the parties were to litigate their declaratory relief claims, and their remaining claims and damages were to be litigated in Phase II. In January 2016, Ross filed a document attesting that it "waives its right to a jury trial under the Federal Rules of Civil Procedure 38, as to any issue in this case for which a right to a jury trial exists." The minutes for a March 2016 status conference with the district court memorialized that "all parties waived their rights to a jury trial on all claims and counterclaims" and the court would conduct a "bench trial, rather than a jury trial." But it appears the court interpreted these waivers to apply only to Phase I of the bifurcated claims because subsequent entries on the district court's docket indicate the court anticipated Phase II would be tried to a jury.

At the conclusion of the Phase I bench trial, the district court denied in part and granted in part the parties' requests for declaratory judgment. The court ruled that Ross's proposed plans to comply with its surrender obligations were insufficient, but it also ruled that Ross was not required to comply with the full scope of work the landlords demanded. The court retained jurisdiction to address the parties' remaining claims and to calculate damages in Phase II. Both defendants filed amended counterclaims against Ross in April 2017, and both demanded a jury trial on those claims. Ross's

answers to the amended counterclaims also included a jury demand.

In September 2017, Ross entered into a global settlement agreement with Walker Place. Thereafter, multiple entries on the district court's docket reflect the court's plan to hold a jury trial on Makarios's counterclaims against Ross. But in November 2018, Makarios moved to withdraw its jury demand. The district court received briefing on the motion from both parties. In its opposition, Ross argued it was entitled to rely on Makarios's request for a jury and that pursuant to Federal Rules of Civil Procedure 38 and 39, Makarios could not withdraw its demand unless Ross consented. *See Reid Bros. Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292, 1304 (9th Cir. 1983) (explaining Rules 38 and 39 are "designed to allow parties to rely upon the jury demand of other parties to the same case" without having to file their own demand). According to Makarios, because Ross waived its right to a jury trial when it entered into the Richmond Building lease, Ross had no ability to object to Makarios's withdrawal of its jury demand or to take advantage of the general rule that parties must consent to a bench trial after a proper jury demand is made, *see, e.g.*, *U.S. Sec. & Exch. Comm'n v. Jensen*, 835 F.3d 1100, 1107 (9th Cir. 2016).

The district court conducted a telephonic hearing on Makarios's motion in December 2018, and in an oral ruling the court granted Makarios's motion. The court reasoned that Section 13.04 of the lease included "an unequivocal and voluntary and knowing waiver . . . by the tenant and its successors, including Ross, to a jury trial." The court acknowledged that Rules 38 and 39 generally allow a party to rely on another party's jury demand, but explained that

because the lease included a waiver of the tenant's right to a jury trial, Ross could not invoke the protections of the Rules to oppose Makarios's withdrawal of its demand. "[I]n order to eliminate any potential risk of prejudice to Ross" for having to prepare for a bench trial, the district court authorized Ross to reopen any depositions and to substitute any of its expert witnesses.

In December 2019, the court held a four-day Phase II bench trial. The district court entered final judgment in favor of Makarios for $2,931,829 in January 2021. Ross timely appealed, and Makarios cross-appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291. The bulk of the issues on appeal are resolved in a concurrently filed memorandum disposition. Here, we affirm the district court's order granting Makarios's motion to withdraw its jury trial demand.

## II

Whether a party is entitled to a jury trial is a question of law that we review de novo. *Thomas v. Or. Fruit Prods. Co.*, 228 F.3d 991, 995 (9th Cir. 2000); *Jensen*, 835 F.3d at 1106. We also review de novo "the district court's interpretation of contract provisions," but we review the district court's factual findings for clear error. *OneBeacon Ins. Co. v. Hass Indus., Inc.*, 634 F.3d 1092, 1096 (9th Cir. 2011). Because jurisdiction in the district court was based on diversity of citizenship, Oregon substantive law and federal procedural law govern. *See Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003). When applying Oregon substantive law, we are bound by decisions of the Oregon Supreme Court. *See In re Kirkland*, 915 F.2d 1236, 1238–39 (9th Cir. 1990). Where there is no Oregon Supreme Court decision on point, we must use "intermediate appellate court decisions,

decisions from other jurisdictions, statutes, treatises, and restatements as guidance" to decide how the Oregon Supreme Court would rule. *Id.* at 1239.

### III

Ross contends the district court erred by allowing Makarios to unilaterally withdraw its demand for a jury trial because Rules 38(d) and 39(a) required Ross's consent. Makarios maintains that Ross cannot take advantage of Rules 38 and 39 because, pursuant to the terms of the parties' lease, Ross waived its right to a jury trial in any proceeding initiated by the landlord. We must decide: (1) whether Ross waived its right to a jury trial pursuant to Section 13.04; and, if so, (2) whether Ross is nevertheless entitled to rely on Rules 38 and 39 to oppose Makarios's withdrawal of its jury demand.

### A

"Because the right to a jury trial is a fundamental right guaranteed to our citizenry by the Constitution," we "indulge every reasonable presumption against waiver." *Solis v. County of Los Angeles*, 514 F.3d 946, 953 (9th Cir. 2008) (quoting *Pradier v. Elespuru*, 641 F.2d 808, 811 (9th Cir. 1981)). A federal court sitting in diversity jurisdiction applies federal procedural law to determine the validity of a jury trial waiver, unless the underlying state law is more protective than federal law. *See In re County of Orange*, 784 F.3d 520, 530–31 (9th Cir. 2015). Like federal law, Oregon law permits a party to waive its constitutional right to a jury trial by knowing and voluntary agreement. *See Hays Grp., Inc. v. Biege*, 193 P.3d 1028, 1029–30 (Or. Ct. App. 2008). Neither Ross nor Makarios argue the waiver in

Section 13.04 of the lease was unknowing or involuntary, but the parties do disagree on the scope of the provision.

Section 13.04 provides that "[t]he Tenant waives all right to trial by jury in any summary or other judicial proceedings hereafter instituted by the Landlord against the Tenant in respect to the demised premises." Oregon's three-part test for contract interpretation governs our interpretation of this provision. *See Yogman v. Parrott*, 937 P.2d 1019, 1021 (Or. 1997). "First, the court examines the text of the disputed provision, in the context of the document as a whole. If the provision is clear, the analysis ends." *Id.* If the contractual provision is ambiguous, the court moves to the second step and examines extrinsic evidence of the parties' intent. *Id.* at 1022. If that step does not resolve the ambiguity, the court proceeds to the last step and "relies on appropriate maxims of [contract] construction." *Id.*

Oregon courts routinely rely on dictionary definitions at the first step to understand the "ordinary meaning" of a contract's terms. *See id.* To understand the meaning of the term "proceeding" as it applies in Section 13.04, both parties quote Black's Law Dictionary, which defines "proceeding" to include:

> 1. The regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment. 2. Any procedural means for seeking redress from a tribunal or agency. 3. An act or step that is part of a larger action. 4. The business conducted by a court or other official body; a hearing.

*Proceeding*, BLACK'S LAW DICTIONARY (11th ed. 2019). The Oregon Court of Appeals has also cited with approval Black's definition of the term "judicial proceeding," as meaning "any court proceeding; any proceeding initiated to procure an order or decree, whether in law or in equity." *Baldwin v. Seida*, 441 P.3d 720, 725 (Or. Ct. App. 2019) (alterations and emphases omitted). *Cf. Whelchel v. Washington*, 232 F.3d 1197, 1209 (9th Cir. 2000) (concluding that a deposition fell within the meaning of a "judicial proceeding," as defined in the Sixth Edition of Black's Law Dictionary).

Ross argues Section 13.04's waiver does not apply to the present dispute because Ross was the first to file suit and Section 13.04 only applies to proceedings initiated by the landlord. We are not persuaded. The ordinary meaning of "judicial proceeding" compels a broader interpretation of Section 13.04 than the one Ross advocates. Makarios can fairly be said to have initiated judicial proceedings when it filed counterclaims against Ross because, like Ross, it too invoked a "procedural means for seeking redress" from the court by filing its own claims. *See Proceeding*, BLACK'S LAW DICTIONARY (11th ed. 2019). At bottom, Section 13.04 unequivocally states the tenant "waives *all* right to trial by jury in *any* . . . judicial proceedings . . . ."

The ordinary meaning of Section 13.04 is clear and it establishes that Ross waived its right to a jury trial on counterclaims filed by Makarios. Because the ordinary meaning of the disputed provision is unambiguous, we need not engage in the latter two steps of Oregon's three-part test for contract interpretation. *See Yogman*, 937 P.2d at 1021–22. And because the parties do not dispute whether

Ross's waiver was knowing and voluntary, we affirm the district court's ruling as to waiver.[1]

B

Next, Ross argues that even if it contractually waived its jury trial right, it was still entitled to rely on Makarios's jury demand per Rules 38(d) and 39(a). Rule 38(d) provides that a proper jury trial demand "may be withdrawn only if the parties consent." Fed. R. Civ. P. 38(d). Rule 39(a) requires trial by jury "on all issues so demanded" unless the parties stipulate or "the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial." Fed. R. Civ. P. 39(a)(1)–(2).

Ross argues that it was entitled to rely on Makarios's proper demand for a jury trial and that Rules 38 and 39 prevented Makarios from unilaterally withdrawing its demand because the parties did not stipulate to a bench trial and the court did not find that no right to a jury trial exists. The district court concluded Rules 38 and 39 did not apply because Ross had no right to a jury trial by virtue of its waiver in Section 13.04 of its lease. The precise function of Rules 38 and 39 in the scenario presented here appears to be an issue of first impression in our court.

---

[1] The parties did not raise, and the district court did not address, Ross's January 2016 filing in the district court stating that Ross waived "its right to a jury trial under [the] Federal Rule[s] . . . as to any issue in this case for which a right to jury trial exists." As noted, some entries on the district court docket that post-date the parties' March 2016 status conference indicate the court was contemplating that Phase II would be tried to a jury. Because Section 13.04 was a knowing and voluntary waiver, we need not decide whether the January 2016 filing constituted a separate waiver of Ross's right to a jury trial.

A party is generally entitled to rely on another party's original jury demand and need not file their own. *See U.S. Sec. & Exch. Comm'n v. Jensen*, 835 F.3d 1100, 1107 (9th Cir. 2016). Typically, the combination of Rules 38(d) and 39(a) prevents a party from unilaterally withdrawing its jury demand, even when no other party has requested a jury trial. *Cf. White v. McGinnis*, 903 F.2d 699, 703 (9th Cir. 1990) (en banc) ("Rule 39(a) is designed to protect against some careless statement or ambiguous document being held to be a waiver when one was not intended."). But the right to rely on another party's jury demand is not unlimited. For example, we have said the right extends only to issues that the original demand actually covered. *See, e.g.*, *Cal. Scents v. Surco Prod., Inc.*, 406 F.3d 1102, 1105–08 (9th Cir. 2005) (explaining a party bringing claims may not rely on another party's jury demand unless those claims "turn on the same matrix of facts" or "concern [] the same general area of dispute" as the claims on which a demand was originally made (alterations in original) (first quoting *Las Vegas Sun, Inc. v. Summa Corp.*, 610 F.2d 614, 620 (9th Cir. 1979); and then quoting *In re N-500L Cases*, 691 F.2d 15, 23 (9th Cir. 1982))).

We have recognized at least two other exceptions to these Rules. First, a party may consent to the unilateral withdrawal of a jury demand through its conduct, and thereby waive its right to rely on the protections of Rules 38(d) and 39(a). *See Reid Bros. Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292, 1304–05 (9th Cir. 1983). "Once a party demonstrates through its actions that it has not relied on another's jury demand in failing to file its own, the reason for allowing it to object when another side unilaterally seeks to withdraw its demand dissolves." *Fuller v. City of Oakland*, 47 F.3d 1522, 1532 (9th Cir. 1995). For example, we will decline to enforce

Rules 38 and 39 "when the party claiming the jury trial right is attempting to act strategically—participating in the bench trial in the hopes of achieving a favorable outcome, then asserting lack of consent to the bench trial when the result turns out to be unfavorable to him." *Solis v. County of Los Angeles*, 514 F.3d 946, 955 (9th Cir. 2008). And in *White*, we explained that a party who "vigorously" argues its case to a judge "can only be ascribed to knowledgeable relinquishment of the prior jury demand" and cannot later object that its case was tried to the bench. *See* 903 F.2d at 700, 703. In contrast, one's "[r]eluctant participation in a bench trial" does not amount to waiver of their right to a jury. *Solis*, 514 F.3d at 956.**[2]**

Separately, we have recognized that the circumstances under which Rule 39(a) allows a jury demand to be withdrawn are not unlimited. *Jensen* cautioned that Rule 39(a) applies "[a]s long as there is a federal right to a jury trial" in the first place. 835 F.3d at 1107. The plain language of Rule 39 requires this exception because it provides that a court may order a bench trial if it "finds that on some or all . . . issues there is no federal right to a jury trial." Fed. R. Civ. P. 39(a)(2).

Two cases involving jury demands are particularly instructive. First, in *Craig v. Atlantic Richfield Co.*, 19 F.3d 472 (9th Cir. 1994), we affirmed a district court's ruling

---

**[2]** This exception does not apply after trial begins because at that point "other reliance interests come into play." *Fuller*, 47 F.3d at 1532. Once trial is underway, we enforce Rule 39(a)'s withdrawal procedures strictly. *See id.* ("[O]nce trial begins, a party may no longer unilaterally withdraw its jury demand; other parties are entitled to rely whether they have waived their rights or not, and withdrawal may occur only in compliance with the language of Rule 39(a).").

rejecting a Jones Act plaintiff's attempt to rely on the defendant's jury trial demand, *id.* at 479.  We reasoned that the federal court's sole basis for jurisdiction was the Jones Act claim and the defendant did not have the right to demand a jury trial for the Jones Act claim.  *Id.* at 476–77 (explaining defendant "had neither a constitutional nor a statutory right to demand a jury trial," and thus its demand could "not have been made 'as provided in Rule 38' for purposes of Rule 39").

*Rachal v. Ingram Corp.*, 795 F.2d 1210 (5th Cir. 1986), is a case on which both Makarios and the district court relied.  There, the Fifth Circuit affirmed a district court's decision to allow the plaintiff to unilaterally strike its jury demand, over the defendant's objection, after the plaintiff amended his complaint to remove the only basis for a jury trial.  *Id.* at 1213–17.  Consistent with our court's interpretation of Rule 39(a), the Fifth Circuit explained that Rule 39(a)'s consent requirement generally serves to protect the rights of a party who did not make the initial jury demand, but Rule 39 does not grant that party "any new or independent right to a jury trial; it simply protects rights to a jury trial that the [non-requesting party] may have been granted elsewhere."  *Id.* at 1215–16.

The district court's ruling in this case is analogous to the Fifth Circuit's ruling in *Rachal*, and is also consistent with our precedent and our practice of interpreting the Rules "in a manner consistent with their underlying purpose."  *Reid Bros.*, 699 F.2d at 1305.  We therefore affirm the district court's interpretation of Rules 38 and 39.  We also affirm its ruling that the application of Rules 38 and 39 here did not entitle Ross to a jury trial after Makarios withdrew its demand because the parties' lease included a waiver of the

tenant's right to a jury trial in proceedings initiated by the landlord.

**AFFIRMED.**