(No. 99094.—

DAVID W. BOWMAN, Appellee, v. AMERICAN RIVER TRANSPORTATION COMPANY *et al.*, Appellants.

*Opinion filed October 20, 2005.*

KILBRIDE, J., specially concurring.

James K. Mondl and James O. Hacking III, of Tonkin & Mondl, L.C., of St. Louis, Missouri, for appellants.

Gail G. Renshaw, Marc W. Parker and Roy C. Dripps, of The Lakin Law Firm, P.C., of Wood River, for appellee.

JUSTICE KARMEIER delivered the opinion of the court:

Plaintiff filed suit against defendants in St. Clair County for injuries suffered while working as a seaman aboard a harbor boat. He claimed negligence under the Jones Act (46 U.S.C. app. § 688 *et seq.* (2000)), unseaworthiness, and maintenance and cure. Defendants filed a timely request for a jury trial, which was stricken by the trial court on plaintiff's motion, citing the Fifth District opinion in *Allen v. Norman Brothers, Inc.*, 286 Ill. App. 3d 1091 (1997), for the proposition that only plaintiffs in Jones Act cases can demand a jury trial. Following a bench trial in which defendants stipulated to liability, the trial court awarded certain damages to plaintiff, including a $325,000 judgment for pain, suffering, disability and disfigurement. Defendants appealed, and the appellate court affirmed in part, finding, *inter alia*, that the trial court did not err in its refusal to recognize defendants' right to trial by jury or in its award of "pain and suffering" damages. No. 5—03—0439 (unpublished order under Supreme Court Rule 23). We granted defendants leave to appeal. 177 Ill. 2d R. 315.

Plaintiff's complaint specifically included claims: (1) under the Jones Act, an *in personam* action for seamen who suffer injury in the course of employment due to the negligence of their employer, the vessel owner, or crew members; (2) for unseaworthiness under general maritime law based on the vessel owner's duty to ensure that

the vessel is reasonably fit to be at sea; and (3) for maintenance and cure under general maritime law, based on the vessel owner's obligation to provide food, lodging and medical services to a seaman injured while serving the ship. See *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 441, 148 L. Ed. 2d 931, 937, 121 S. Ct. 993, 997 (2001). The evidence presented at trial established, *inter alia*, the following. Plaintiff worked for defendant American River Transportation Company (ARTCO) as a deckhand. While laboring aboard a harbor boat on May 25, 2001, a defective cable broke apart, struck plaintiff's leg, and broke his right tibia, the bone extending from the knee to the ankle. Plaintiff underwent surgery which consisted of inserting a rod inside the broken bone to serve as an internal splint to maintain alignment of the bone while it healed. The rod was held in place with one screw below the knee and two above the ankle. The surgery was completed successfully, without any complications, and within six months, plaintiff's doctor released him to return to full-time heavy manual labor. Plaintiff then began working, and has since continued to work, in the drywall trade.

As to the issue of plaintiff's pain, suffering, disability and disfigurement, the evidence showed that the injury involved a significant amount of force and was incredibly painful. However, there was no dispute that, at the time of trial, plaintiff was no longer experiencing excruciating or constant pain. Rather, plaintiff can now work and engage in whatever recreational activities he performed before his injury, including running, biking and swimming. Plaintiff did testify that sometimes his leg is sore after a full day of work or after playing sports, and thus he does experience moderate pain at times.

After the trial concluded, the court issued its judgment, awarding plaintiff $12,000 in past lost wages; $325,000 in pain, suffering, disability and disfigurement;

$7,200 in maintenance and cure; and $7,200 in attorney fees. On appeal, the panel diminished the maintenance award from $7,200 to $3,300, and vacated the award of attorney fees in its entirety. However, as mentioned, the appellate court affirmed the remainder of the trial court's findings, specifically the "pain and suffering" award and the striking of defendants' jury demand. The panel rejected defendants' reliance on an opinion recently filed in the Fourth District, *Hutton v. Consolidated Grain & Barge Co.*, 341 Ill. App. 3d 401 (2003), which directly conflicts with *Allen* and holds that both parties in a Jones Act case are entitled to demand trial by jury.

Thus, the appeal before us raises two issues: (1) whether the trial court erred in striking defendants' jury demand in this state court Jones Act case; and (2) whether the $325,000 judgment for pain, suffering, disability and disfigurement is supported by the evidence. We find the dispositive issue to be whether, pursuant to the Jones Act, a defendant may demand a jury trial in a case filed in this state, or whether that right is reserved solely for the plaintiff. As this issue involves the construction of a statute, it is a question of law, and our standard of review is *de novo. Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co.*, 215 Ill. 2d 121, 128 (2005); *People v. Robinson*, 172 Ill. 2d 452, 457 (1996). We further note that the cardinal rule of statutory construction is to ascertain and give effect to the true intent and meaning of the legislature. *Progressive Universal Insurance*, 215 Ill. 2d at 134; *People ex rel. Birkett v. City of Chicago*, 202 Ill. 2d 36, 45 (2002). Thus, before determining the proper construction of the Jones Act provision at issue, we believe it helpful to understand the historical background of this federal legislation and its place in maritime law.

"Article III, § 2, of the United States Constitution vests federal courts with jurisdiction over all cases of

admiralty and maritime jurisdiction. Section 9 of the Judiciary Act of 1789 codified this grant of exclusive original jurisdiction, but 'sav[ed] to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it.' Ch. 20, § 9, 1 Stat. 77." *Lewis*, 531 U.S. at 443, 148 L. Ed. 2d at 939, 121 S. Ct. at 998. That jurisdictional statute now states, with its substance largely unchanged, that " '[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of ... any civil case of admiralty or maritime jurisdiction, *saving to suitors in all cases all other remedies to which they are otherwise entitled.*' 28 U.S.C. § 1333(1) (emphasis added)." *Lewis*, 531 U.S. at 443-44, 148 L. Ed. 2d at 939, 121 S. Ct. at 998-99. Thus, the federal "saving to suitors" clause preserves remedies and the concurrent jurisdiction of state courts over some admiralty and maritime claims. *Lewis*, 531 U.S. at 445, 148 L. Ed. 2d at 940, 121 S. Ct. at 999.

In 1903, the United States Supreme Court issued its opinion in *The Osceola*, 189 U.S. 158, 47 L. Ed. 760, 23 S. Ct. 483 (1903), which halted negligence suits by seamen, and allowed only claims based on maintenance and cure, and unseaworthiness of the vessel to proceed. In 1915, Congress, believing that seamen needed a negligence remedy, responded to the *Osceola* decision by enacting section 20 of the Act to Promote the Welfare of American Seamen (ch. 153, 38 Stat. 1164, 1185 (1915)). However, the language of the 1915 statute did not have the intended effect, and in 1920 Congress enacted the present Jones Act, which provides, in pertinent part, as follows:

> "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply ***."
> 46 U.S.C. app. § 688(a) (1988).

The railway employees' statutes referred to above comprise the Federal Employer's Liability Act (FELA) (45 U.S.C. §§ 51 through 60 (2000)), which offers, *inter alia*, a negligence remedy for certain railway workers against their employers. FELA was incorporated by reference into the Jones Act. See 45 U.S.C. §§ 51 through 60 (2000).

In *Panama R.R. Co. v. Johnson*, 264 U.S. 375, 68 L. Ed. 748, 44 S. Ct. 391 (1924), the United States Supreme Court rejected a claim that the Jones Act was unconstitutional, and held that its essential features are as follows: (1) an injured seaman can pursue the FELA-based negligence remedy in admiralty court; (2) alternatively, he can choose to sue on the law side of federal court on the basis of the Jones Act's language and the general grant of federal question jurisdiction; (3) when the seaman chooses the federal question/law side route, he is deemed to have invoked the permission granted by the general saving to suitors clause to bring a maritime case in a common law court; (4) the applicability of the saving to suitors clause to Jones Act federal question/law side suits entails the conclusion that Jones Act suits can also be maintained in state courts, and in federal court based on diversity jurisdiction; and (5) Jones Act cases are characterized as admiralty cases when they are maintained in federal court on the basis of admiralty jurisdiction. *Johnson*, 264 U.S. at 382-85, 388, 391, 68 L. Ed. at 751-52, 753, 754, 44 S. Ct. at 392, 394, 395; D. Robertson & M. Sturley, *The Right to a Jury Trial in Jones Act Cases: Choosing the Forum Versus Choosing the Procedure*, 30 J. Mar. L. & Com. 649, 657-58 (1999). When Jones Act cases are brought on any other jurisdictional basis, whether in state court or on the law side of federal court, they, like other saving-clause cases, are deemed to be cases at common law. *Johnson*, 264 U.S. at 382, 388, 391, 68 L. Ed. at 751, 753, 754-55, 44 S. Ct. at 392, 394,

395. With this background in mind, we now examine the Jones Act's language for assistance in deciding the issue before us.

As stated earlier, the primary rule of statutory construction is to ascertain and give effect to the legislature's intent. *Progressive Universal Insurance*, 215 Ill. 2d at 134; *People ex rel. Birkett*, 202 Ill. 2d at 45. "We determine legislative intent by examining the language of the statute, which is 'the most reliable indicator of the legislature's objectives in enacting a particular law.' " *In re Detention of Lieberman*, 201 Ill. 2d 300, 308 (2002), quoting *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504 (2000); see also *Hutton*, 341 Ill. App. 3d at 406. Further, when undertaking the interpretation of a statute, we must presume that, when the legislature enacted a law, it did not intend to produce absurd, inconvenient or unjust results. *Progressive Universal Insurance*, 215 Ill. 2d at 134.

The key sentence of the Jones Act at issue here states: "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury" (46 U.S.C. App. § 688(a) (2000)). We believe that anyone well versed in statutory construction, or even English grammar, would find the plain language of that sentence clearly states that the "election" to be made by the seaman pertains to his choice to maintain an action "at law," and not his election of a "right of trial by jury." Under the principle of statutory construction known as the last antecedent doctrine, relative or qualifying words or phrases in a statute serve only to modify words or phrases which are immediately preceding and do not modify those which are more remote. *People v. Davis*, 199 Ill. 2d 130, 138 (2002); *McMahan v. Industrial Comm'n*, 183 Ill. 2d 499, 511-12 (1998); *In re Application for Judgment & Sale of Delinquent Proper-*

*ties for the Tax Year 1989*, 167 Ill. 2d 161, 169 (1995); *Hutton*, 341 Ill. App. 3d at 406.

In *Davis*, this court explained that in addition to the last antecedent doctrine, the doctrine of *ejusdem generis* is used to interpret statutes by providing that "when a statutory clause specifically describes several classes of persons or things and then includes 'other persons or things,' the word 'other' is interpreted as meaning 'other such like.' " *Davis*, 199 Ill. 2d at 138, quoting *Farley v. Marion Power Shovel Co.*, 60 Ill. 2d 432, 436 (1975). Thus, in determining whether a pellet/BB gun was a dangerous weapon within the meaning of the armed violence statute, the *Davis* court reasoned as follows:

"[W]hen defining category I weapons, the armed violence statute begins by specifically listing firearm-type weapons by various commonly recognized names, followed by the clause, 'any other firearm.' The definition then goes on to specifically include 'sawed-off shotgun, a stun gun or taser as defined in paragraph (a) of Section 24—1 of this Code, knife with a blade of at least 3 inches in length, dagger, dirk, switchblade knife, stiletto.' The concluding phrase, 'any other deadly or dangerous weapon or instrument of like nature,' comes at the end of the list of blade-type weapons. Applying the doctrine of *ejusdem generis* in conjunction with the last antecedent rule, we find that the phrase 'any other deadly or dangerous weapon or instrument of like nature' was intended to refer only to weapons or instruments 'such like' the class of blade-type weapons which immediately preceded the clause in the provision, *i.e.*, weapons or instrument that are sharp and have the ability to cut or stab. We do not believe that the clause 'any other deadly or dangerous weapon or instrument of like nature' was intended to modify all of the named weapons and, thus, was not intended to include BB guns, pellet guns, paint ball guns or any other weapons, which are not firearms, but are *of like nature* to firearms." (Emphasis in original.) *Davis*, 199 Ill. 2d at 138-39, quoting 720 ILCS 5/33A—1 (West 1992).

In the case before us, the language of the Jones Act

is more straightforward and thus more easily interpreted than in *Davis*. "The Jones Act does not explicitly state only the plaintiff may elect a trial by jury. This [construction] would be true if the 'election' referred to in the statute was the election of trial by jury." *Hutton*, 341 Ill. App. 3d at 406, quoting 46 U.S.C. app. § 688(a) (2000). Rather, under the last antecedent doctrine, the phrase " 'at his election' " modifies " 'may *** maintain an action for damages at law,' " because the phrase " 'with the right of trial by jury,' " is separated from the modifying phrase " 'at his election' " by " 'maintain an action for damages at law.' " *Hutton*, 341 Ill. App. 3d at 406, quoting 46 U.S.C. app. § 688(a) (2000). Therefore, the rules of statutory construction clearly establish that the "election" referred to in the Jones Act is *not* the seaman's election of a trial by jury, but his election to proceed "at law" rather than in admiralty. See *Hutton*, 341 Ill. App. 3d at 406.

Plaintiff argues that the Fifth District herein and in *Allen*, and not the Fourth District in *Hutton*, correctly interpret the plain meaning of this section of the Jones Act, which is to provide only the plaintiff with a right to elect between a bench trial and a trial by jury. No. 5—03—0439 (unpublished order under Supreme Court Rule 23), citing *Allen*, 286 Ill. App. 3d at 1094. However, we find that, in addition to our reading of the plain language of the Jones Act, which is supported by the rules of statutory construction, a close inspection of the case law also leads to the conclusion that it is *Hutton* which correctly interprets the statute's meaning.

*Hutton* relies in part on the United States Supreme Court's decision in *Johnson*, 264 U.S. at 388, 68 L. Ed. at 753, 44 S. Ct. at 394, which held, *inter alia*, that the Jones Act gave seamen the substantive election between two "alternatives accorded by the maritime law." The statute "brings into [general maritime] law new rules,

drawn from another system, and extends to injured seamen a right to invoke, at their election, either the relief accorded by the old rules, or that provided by the new rules." *Johnson*, 264 U.S. at 388, 68 L. Ed. at 753, 44 S. Ct. at 394. *Hutton* further cites *Panama R.R. Co. v. Vasquez*, 271 U.S. 557, 560, 70 L. Ed. 1085, 1087, 46 S. Ct. 596, 597 (1926), wherein the United States Supreme Court stated that "the procedural provisions [of the Jones Act] have been construed \*\*\* to mean that the new substantive rights may be asserted and enforced either in actions *in personam* against the employers in courts administering common-law remedies, with a right of trial by jury, or in suits in admiralty \*\*\* without trial by jury." Thus, we agree with the *Hutton* court that *Vasquez* and *Johnson* hold these "new substantive rights" created by the Jones Act consist solely of a "new" maritime remedy whereby a seaman may choose to sue in negligence, and the right to file that suit either: (1) at law, with the attendant right to a trial by jury; or (2) in admiralty, where there is no right to trial by jury. See *Hutton*, 341 Ill. App. 3d at 407.

We note that plaintiff also cites the decision in *Johnson* as supportive of his belief that the Jones Act provides a plaintiff with the sole right to demand a jury in an action at common law. However, instead of looking at *Johnson* in its entirety, plaintiff concentrates on one paragraph of the opinion and interprets it completely out of context. The portion of *Johnson* to which plaintiff points states:

> "A further objection urged against the statute is that it conflicts with the due process of law clause of the Fifth Amendment in that it permits injured seamen to elect between varying measures of redress and between different forms of action without according a corresponding right to their employers, and therefore is unreasonably discriminatory and purely arbitrary. \*\*\* Of course the objection must fail. There are many instances in the law where a person entitled to sue may choose between alternative

measures of redress and modes of enforcement; and this has been true since before the Constitution. But it never has been held, nor thought so far as we are advised, that to permit such a choice between alternatives otherwise admissible is a violation of due process of law. In the nature of things, the right to choose cannot be accorded to both parties, and, if accorded to either, should rest with the one seeking redress rather than the one from whom redress is sought." *Johnson,* 264 U.S. at 392-93, 68 L. Ed. at 755, 44 S. Ct. at 396.

This paragraph in *Johnson* includes, *inter alia,* the following propositions: (1) the Jones Act gives the plaintiff a choice between "varying" or "alternative measures of redress", and (2) the Act gives the plaintiff a choice between "different forms of action" or "alternative *** modes of enforcement." *Johnson,* 264 U.S. at 392-93, 68 L. Ed. at 755, 44 S. Ct. at 396; D. Robertson & M. Sturley, *Understanding Panama R.R. Co. v. Johnson: The Supreme Court's Interpretation of the Seaman's Elections Under the Jones Act,* 14 U.S.F. Mar. L.J. 229, 245 (2001-02). There appears to be no debate that the terms "varying" or "alternative measures of redress" refer to *The Osceola* remedies of unseaworthiness and maintenance and cure, versus the "new" negligence action. See 14 U.S.F. Mar. L.J. at 245. However, the key disagreement between plaintiff and defendant herein relates to the second proposition. "What did the Court mean by saying that the Jones Act gives the plaintiff a choice between alternative 'forms of action' ('modes of enforcement')?" 14 U.S.F. Mar. L.J. at 245. Plaintiff argues that these terms refer to a jury trial versus a nonjury trial, whereas defendants argue the terms refer instead to the plaintiff's election between bringing a Jones Act suit in admiralty or on the law side. We agree with defendants.

As earlier noted, any search for the meaning of this paragraph in *Johnson,* and particularly the meaning of the term "forms of action" and "modes of enforcement" as used therein, must begin by placing the paragraph in

context with the rest of the Court's opinion. *Johnson,* 264 U.S. at 392-93, 68 L. Ed. at 755, 44 S. Ct. at 396. The *Johnson* Court's primary objective was to determine the constitutionality of the Jones Act. In doing so, *Johnson* clearly explained that the Act's purpose was not to remove the negligence right of action from admiralty jurisdiction and make it cognizable only on the common law side of the courts, which would indeed raise constitutionality questions, but rather "the terms of the statute in this regard are not imperative but permissive." *Johnson,* 264 U.S. at 389-91, 68 L. Ed. at 754, 44 S. Ct. at 395. "[The Jones Act] says 'may maintain' an action at law 'with the right of trial by jury,' the import of which is that the injured seaman is permitted, but not required, to proceed on the common-law side of the court *with a trial by jury as an incident.*" (Emphasis added.) *Johnson,* 264 U.S. at 390-91, 68 L. Ed. at 754, 44 S. Ct. at 395, quoting 46 U.S.C. app. § 688(a). The Court further found that, under this view, the Jones Act leaves the injured seaman free "under the general law *** of the Judicial Code" to assert his right of action under the new rules on the admiralty side of the court, where the issues will be tried by the court, or on the common-law side, where there will be a right of trial by jury. *Johnson,* 264 U.S. at 391, 68 L. Ed. at 755, 44 S. Ct. at 395.

Thus, examining *Johnson* in its entirety shows that the "forms of action" choice discussed in the paragraph cited by plaintiff refers to admiralty actions versus at-law negligence actions. We can find nothing in the *Johnson* opinion which suggests that the term "forms of action" could have been intended to refer to a choice between jury and nonjury trials in common law actions. Indeed, the jury trial is explicitly referred to "as an incident" of the choice "to proceed on the common law side of the court." *Johnson,* 264 U.S. at 391, 68 L. Ed. at 754, 44 S. Ct. at 395; see 14 U.S.F. Mar. L.J. at 251. We

therefore conclude that *Johnson* does not support plaintiff's view that the Jones Act gave to plaintiffs the unilateral right to elect the form of trial, *i.e.*, jury or non-jury, in an action at law.

This conclusion, however, does not negate the fact that, under the Jones Act, a plaintiff *does* control the choice between a bench or jury trial by using his choice of the forum. That is, the plaintiff desiring a bench trial may bring his case in admiralty under 28 U.S.C. § 1333, as there, neither party is entitled to a jury trial. See 30 J. Mar. L. & Com. at 669. On the other hand, the plaintiff desiring a jury trial may bring his case, pursuant to the saving-to-suitors clause, on the law side of federal court or in a state court whose law guarantees the right to a jury trial. See 30 J. Mar. L. & Com. at 669-70. Thus, having the power to control the forum, the Jones Act plaintiff starts out with full control over whether the case will be tried to a jury. It is in this sense that statements to the effect that "the Jones Act gives only the plaintiff the right to choose a jury trial" are true. However, *Johnson* and its predecessor in the Second Circuit make it clear that once the Jones Act plaintiff has made his forum choice, if defendants in that forum normally have a right to a jury, then so does the Jones Act defendant. See 30 J. Mar. L. & Com. at 670, citing *Johnson*, 264 U.S. at 391, 68 L. Ed. at 754, 44 S. Ct. at 395; *Panama R.R. Co. v. Johnson*, 289 F. 964 (2d Cir. 1923), *aff'd*, 264 U.S. 375, 68 L. Ed. 748, 44 S. Ct. 391 (1924).

Given the foregoing, we agree with defendants that *Hutton* correctly found the Jones Act did not express an intention by Congress to dictate the method of trial in state court. "Based on our construction of the statute, we conclude the Jones Act does not limit the right to trial by jury to the plaintiff only." *Hutton*, 341 Ill. App. 3d at 407. However, plaintiff argues that the *Hutton*

court's decision is contrary to the overwhelming weight of both federal and Illinois case law. See *Allen v. Norman Brothers, Inc.*, 286 Ill. App. 3d 1091 (1997); see also *Hanks v. Luhr Brothers, Inc.*, 303 Ill. App. 3d 661 (1999); *Hearn v. American River Transportation Co.*, 303 Ill. App. 3d 619 (1999); *Gibbs v. Lewis & Clark Marine, Inc.*, 298 Ill. App. 3d 743 (1998); *Craig v. Atlantic Richfield Co.*, 19 F.3d 472 (9th Cir. 1994); *Linton v. Great Lakes Dredge & Dock Co.*, 964 F.2d 1480 (5th Cir. 1992); *Rachal v. Ingram Corp.*, 795 F.2d 1210 (5th Cir. 1986). Plaintiff further argues that because federal court decisions interpreting a federal act are binding upon Illinois courts, it was improper for the appellate court in *Hutton* to interpret a federal statute contrary to interpretations made by federal appellate courts. See *Hutton*, 341 Ill. App. 3d at 408 (Myerscough, P.J., dissenting), citing *Sundance Homes, Inc. v. County of Du Page*, 195 Ill. 2d 257, 276 (2001).

We acknowledge that in *Rachal*, 795 F.2d at 1215, the federal district court held that the "Jones Act gives only the seaman-plaintiff the right to choose a jury trial," and in *Craig*, 19 F.3d at 476, the court found "[t]he plain language of the Jones Act gives a *plaintiff* the option of maintaining an action at law with the accompanying right to a jury trial *** [and] makes no mention of a defendant." (Emphasis in original.) Further, in *Linton*, 964 F.2d at 1490, the court held that "the Jones Act allows the injured seaman to elect a non-jury trial 'at law' in a state court." Based upon these federal court decisions, the Fifth District in *Allen* and its above-stated progeny established the same precedent in Illinois. However, this court has now stated its agreement with the *Hutton* opinion and, in turn, its disagreement with

*Rachal* and the line of cases which has furthered its reasoning.[1]

Further, we reject plaintiff's claim that we are bound by federal court decisions on this issue. While in *Wilson v. Norfolk & Western Ry. Co.*, 187 Ill. 2d 369, 383 (1999), this court stated "federal decisions are considered controlling on Illinois state courts interpreting a federal statute" because federal statutes must be given uniform application, six months later, in *Weiland v. Telectronics Pacing Systems, Inc.*, 188 Ill. 2d 415, 423 (1999), this court held that it need not follow Seventh Circuit precedent for three reasons—the United States Supreme Court had not ruled on the issue, there was a split of authority among the federal circuit courts of appeals, and this court believed that the Seventh Circuit case was wrongly decided. Later, in *Sprietsma v. Mercury Marine*, 197 Ill. 2d 112 (2001), *reversed on other grounds*, 537 U.S. 51, 154 L. Ed. 2d 466, 123 S. Ct. 518 (2002), this court attempted to reconcile the *Wilson* and *Weiland* decisions, stating:

> "[A]s we have repeatedly recognized, uniformity of decision is an important consideration when state courts interpret federal statutes. [Citations.] *** In the absence of a decision of the United States Supreme Court, which would definitively answer the question presented by this case, we elect to give considerable weight to the decisions of federal courts of appeals and federal district courts that have addressed this issue." *Sprietsma*, 197 Ill. 2d at 120.

Accordingly, while a decision of the United States Supreme Court is binding on this court, federal circuit and district court decisions were recognized in *Sprietsma* as merely being persuasive. See *Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*, 347 Ill. App. 3d 828, 835 (2004). Further, in *Bishop v. Burgard*, 198 Ill. 2d 495, 507 (2002),

---

[1]See 30 J. Mar. L. & Com. at 659-67 (for a well-reasoned discussion of *Rachal*, its history, and the way it and its progeny came to their erroneous conclusions).

this court held that federal circuit courts of appeals exercise no appellate jurisdiction over the Illinois Supreme Court, and that we need not follow their precedent where the United States Supreme Court has not yet answered the precise question. Here, therefore, where the Supreme Court has not yet ruled upon the question presented, *i.e.*, whether a defendant in a state common law Jones Act case is entitled to demand a trial by jury, we are not bound by the holding in *Rachal* or any federal or circuit court rulings on this issue. Rather, based on our own construction of the statute and cases such as *Johnson* and *Hutton* which have interpreted it, we hold that the Jones Act does not give an exclusive right to the plaintiff to elect a trial by jury in an action filed in state court. *Allen* and its Fifth District progeny, *Hanks*, *Hearn*, and *Gibbs*, are therefore overruled on this point.

Plaintiff's next argument is that federal substantive law, rather than state procedural law, governs the right to a jury trial in a common law Jones Act case filed in state court. Plaintiff relies mainly on *Dice v. Akron, Canton & Youngstown R.R. Co.*, 342 U.S. 359, 363, 96 L. Ed. 398, 404, 72 S. Ct. 312, 315 (1952), wherein the Supreme Court asserted that "the right to trial by jury is too substantial a part of the rights accorded by [FELA] to permit it to be classified as a mere 'local rule of procedure' for denial in the manner that Ohio has here used. [Citation.]" It is true that because the Jones Act incorporates FELA by reference, FELA decisions are persuasive authority on the meaning of the Jones Act. See, *e.g.*, *Kernan v. American Dredging Co.*, 355 U.S. 426, 439, 2 L. Ed. 2d 382, 392, 78 S. Ct. 394, 401 (1958). We, nevertheless, do not believe that *Dice* resolves the question here.

Even if, *arguendo*, we agreed that *Dice* should extend to the Jones Act context, *Dice* does not suggest that the

plaintiff's "substantial" right to a jury trial would also include the disputed right under *Rachal* to insist upon a nonjury trial. See *Dice*, 342 U.S. at 365, 96 L. Ed. at 405, 72 S. Ct. at 316 (Frankfurter, J., concurring in part and dissenting in part, joined by Reed, Jackson and Burton, JJ.) (a state may not "discriminate disadvantageously against actions for negligence under the [FELA] as compared with local causes of action in negligence. [Citations.] Conversely *** a state is under no duty to treat actions arising under [FELA] differently from the way it adjudicates local actions for negligence, so far as the mechanics of litigation, the forms in which law is administered, are concerned"). "In other words, even if one believed that the Jones Act forbids the states from denying plaintiffs (and even defendants) the right to a jury trial, there would still be no basis for concluding that the Jones Act guarantees plaintiffs a state-court bench trial by forbidding the states from extending to defendants the jury-trial rights that would otherwise exist." 14 U.S.F. Mar. L.J. at 263. Thus, we find no reason to rely on *Dice* and the other FELA cases regarding the type of law governing the right to a jury trial in state Jones Act cases. See generally *Cox v. Roth*, 348 U.S. 207, 209, 99 L. Ed. 260, 263, 75 S. Ct. 242, 243-44 (1955) (in Jones Act cases, the courts are not bound to follow FELA itself, let alone a decision construing FELA, when its application appears unreasonable).

As simply stated in *Hutton*: "Procedural rules in a Jones Act claim are governed by the forum in which the claim is filed." *Hutton*, 341 Ill. App. 3d at 407. Indeed, even *Linton* held that if the plaintiff elects to proceed with his Jones Act case "at law" in state court, " 'whether he, *or the defendant*, would have a right to trial by jury would depend on state civil procedure.' " (Emphasis added.) *Linton*, 964 F.2d at 1487, quoting *Pellegrin v. International Independent Towing*, No. 88—

5255, slip op. at 3-4 (E.D. La. March 6, 1989). This conclusion, we believe, is also the broad message of the Supreme Court's decision in *American Dredging Co. v. Miller*, 510 U.S. 443, 127 L. Ed. 2d 285, 114 S. Ct. 981 (1994), where, in deciding the treatment of venue under the Jones Act, the Court quoted *Bainbridge v. Merchants & Miners Transportation Co.*, 287 U.S. 278, 280-81, 77 L. Ed. 302, 304-05, 53 S. Ct. 159, 159-60 (1932), for the proposition that "although 46 U.S.C. App. § 688(a) contains a venue provision, 'venue [in Jones Act cases brought in state court] should ... [be] determined by the trial court in accordance with the law of the state.' " *American Dredging Co. v. Miller*, 510 U.S. 443, 457, 127 L. Ed. 2d 285, 299, 114 S. Ct. 981, 990 (1994). Thus, in *American Dredging Co.*, as here, the characterization of a state rule as substantive or procedural is a good indicator of whether federal preemption exists. See *American Dredging Co.*, 510 U.S. at 457-58, 127 L. Ed. 2d at 300, 114 S. Ct. at 990 (Souter, J., concurring). We therefore hold that the availability of a jury trial in Jones Act cases is a question that is properly controlled by the normal laws of the forum.

Having found that the right to try a Jones Act case in state court is indeed a matter of state law, we must now determine under what authority defendants herein may claim this right. Plaintiff contends that no authority exists under *Illinois* law providing defendants in this common law Jones Act case with a trial by jury, and that the lower courts were therefore correct in rejecting defendants' demand for a jury trial. We begin by stating our agreement with plaintiff that section 2—1105 of the Code of Civil Procedure (735 ILCS 5/2—1105 (West 2000)) does not, as the *Hutton* majority reasoned, establish a Jones Act defendant's *right* to a state jury trial. Rather, that section states: "A defendant desirous of a trial by jury must file a demand therefor not later

than the filing of his or her answer." 735 ILCS 5/2—1105(a) (West 2000). Thus, this section of the Code of Civil Procedure merely provides the process by which a party may advise the court of its desire for a jury trial (*Roszell v. Gniadek*, 348 Ill. App. 341, 343-44 (1952)), and says nothing about whether a party is entitled to a jury trial in any given action. *Hutton*, 341 Ill. App. 3d at 409 (Myerscough, P.J., dissenting). However, we also agree with defendants that the right to a jury trial *is* guaranteed to Jones Act defendants through our state constitution.

Article I, section 13, of the Illinois Constitution of 1970 provides: "The right of trial by jury as heretofore enjoyed shall remain inviolate." Ill. Const. 1970, art. I, § 13. The Illinois Constitution of 1870 first employed the phrase "as heretofore enjoyed" when speaking of the inviolate right of trial by jury. Ill. Const. 1870, art. II, § 5; *People ex rel. Daley v. Joyce*, 126 Ill. 2d 209, 213-14 (1988). Under this provision, parties to a civil case are entitled to a jury trial when that right existed at common law. *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 72 (1994); see also *Research Hospital v. Continental Illinois Bank & Trust Co.*, 352 Ill. 510, 521 (1933) ("The right to a jury trial 'as heretofore enjoyed,' secured by our constitution, is a jury trial in those tribunals which exercise common law jurisdiction"). In other words, Illinois courts have construed the Illinois constitutional guarantee of a right to trial by jury as adhering to those actions known at common law at the time the "as heretofore enjoyed" language was adopted. See *People ex rel. O'Malley v. 6323 North LaCrosse Avenue*, 158 Ill. 2d 453, 457 (1994); *Joyce*, 126 Ill. 2d at 215.

We note that there is some debate between the parties as to whether the 1870 or the 1970 constitution is the pertinent time frame for this determination. However, we need not decide this question definitively here, as our

research reveals that injured seamen were trying their common law negligence cases to juries in Illinois long before the Jones Act was adopted in 1920, and even before the "as heretofore enjoyed" language was first adopted in the constitution of 1870. See, *e.g.*, *Western Stone Co. v. Whalen*, 151 Ill. 472 (1894); *Schooner "Norway" v. Jensen*, 52 Ill. 373 (1869). Thus, by including the phrase "as heretofore enjoyed" in the jury clause of both the Illinois constitutions of 1870 and 1970, the framers must have intended to incorporate the practice of jury trials for injured seamen which Illinois had employed in the years prior to the adoption of those constitutions. See *Joyce*, 126 Ill. 2d at 221 ("At the time of the insertion of 'as heretofore enjoyed,' it would seem logical to believe that the drafters of the 1870 constitution, by that insertion, referred to the nearly 100 years of trial by jury experience that the people of this State and territory had enjoyed").

Finally, plaintiff argues that, irrespective of whether suits by injured seamen were tried to juries before our constitution adopted the "as heretofore enjoyed" language, the Jones Act is a "new cause of action" and a statutory proceeding unknown to the common law. Therefore, plaintiff contends claims filed under the Act are without a right to trial by jury in Illinois courts. For this proposition, plaintiff cites, *inter alia*, *Martin*, 163 Ill. 2d at 76 (because the Consumer Fraud Act is a statutory proceeding unknown to the common law, our constitution does not confer the right to a jury trial for a claim made under the Act), and *Brown v. C.D. Mallory & Co.*, 122 F.2d 98, 101 (3d Cir. 1941) (the Jones Act in effect created a "new cause of action" at law (as distinguished from admiralty) for seamen with personal injuries arising by reason of the employer's negligence as distinguished from the causes of action of ancient origin which arose from defective equipment or an unseaworthy ves-

sel). We agree with defendants that this argument is without merit.

The Supreme Court's decision in *The Osceola*, which temporarily halted suits by seamen based on negligence, does not alter the fact that such suits were indeed tried to juries and were "heretofore enjoyed" in pre-*Osceola* days. Indeed, plaintiff's characterization of the Jones Act as creating a new cause of action contradicts Supreme Court cases which have recognized that the Jones Act simply removed the bar to common law suits that *The Osceola* had created, and allowed seamen to invoke common law principles like other tort victims. See *McDermott International, Inc. v. Wilander*, 498 U.S. 337, 354, 112 L. Ed. 2d 866, 881-82, 111 S. Ct. 807, 817 (1991); *Panama R.R. Co. v. Vasquez*, 271 U.S. 557, 561, 70 L. Ed. 1085, 1087-88, 46 S. Ct. 596, 597 (1926) ("an action *in personam* to recover damages for tort is one of the most familiar of the common-law remedies, and it is such a remedy at law that is contemplated by [the Jones Act] and invoked in this case"). Thus, while the Jones Act is a statute, its purpose was to reestablish the long-standing common law right of seamen to sue for negligence which *The Osceola* had taken away. As defendants aptly state, "the essence of a Jones Act suit is still common law negligence, which has always been the subject of jury trials in Illinois."

We therefore conclude that Jones Act defendants litigating in Illinois courts have the right to a trial by jury under our state constitution. This decision makes it unnecessary to address defendants' additional argument that the appellate court's interpretation of the Jones Act creates constitutional problems such as the right to equal protection under the law. *In re Barbara H.*, 183 Ill. 2d 482, 492 (1998) (if a case may be decided on other grounds, the constitutionality of a statute should not be addressed). However, we agree with professors Robertson

and Sturley who, in responding to arguments made by Jones Act plaintiffs in defending similar claims, stated:

"It is nothing short of astonishing to suggest that—in a forum in which jury trials are generally available at the request of either party—one party would have a unilateral right to choose between a jury and a bench trial. Such a unilateral right would be unprecedented in law *** and contrary to basic notions of even-handed procedural fairness." 14 U.S.F. Mar. L.J. at 268.

Because we have now held that neither the language of the Jones Act, nor case law interpreting it, nor Illinois law prevent a defendant in a common law action under that statute to demand a jury trial in this state, it is clear that the lower courts herein erred in denying defendants' motion seeking a jury trial on plaintiff's negligence claim. Defendants are additionally entitled to a jury trial on the unseaworthiness and maintenance and cure counts of plaintiff's complaint. See *Fitzgerald v. United States Lines Co.*, 374 U.S. 16, 21, 10 L. Ed. 2d 720, 725, 83 S. Ct. 1646, 1650 (1963) (because the jury is the only tribunal competent to try all types of maritime cases, a maintenance and cure claim joined with a Jones Act claim must be submitted to the jury when both arise out of one set of facts). Given these findings and the necessity that a new trial be held with a jury, it is unnecessary to address the question of whether the pain, suffering, disability and disfigurement damages awarded to plaintiff were excessive.

For the foregoing reasons, the judgments of both the appellate court and the circuit court are reversed, and the cause is remanded to the circuit court for a trial by jury.

*Judgments reversed;*
*cause remanded.*


JUSTICE KILBRIDE, specially concurring:
I agree with the result reached by the majority and

with its analysis except for the reasoning concerning whether Illinois law provides Jones Act defendants with a right to trial by jury. I believe that other authority clearly exists supporting the existence of that right and, therefore, I write separately to explain my view.

The majority has correctly concluded that "the availability of a jury trial in Jones Act cases is a question that is properly controlled by the normal laws of the forum." 217 Ill. 2d at 94. The opinion, however, rejects the reasoning of the *Hutton* majority that section 2—1105 of the Code of Civil Procedure (Code) establishes a Jones Act defendant's right to trial by jury. Instead, the majority adopts the argument of dissenting Justice Myerscough and holds that this section "merely provides the process by which a party may advise the court of its desire for a jury trial [citation], and says nothing about whether a party is entitled to a jury trial in any given action." 217 Ill. 2d at 95.

The plain language of section 2—1105 compels a contrary conclusion. The section provides in relevant part:

"A defendant desirous of a trial by jury must file a demand therefor not later than the filing of his or her answer. Otherwise, the party waives a jury. *** If the plaintiff files a jury demand and thereafter waives a jury, any defendant *** shall be granted a jury trial upon demand therefor made promptly after being advised of the waiver ***." 735 ILCS 5/2—1105 (a) (West 2000).

The waiver provision would, of course, be meaningless unless the right of any party to a jury trial exists. The section uses the mandatory term "shall" in commanding the grant of a jury trial to a defendant asserting that right following a waiver by the plaintiff or another defendant. All of the provisions in article 2 of the Code apply to matters of procedure not regulated by other statutes. 735 ILCS 5/1—108(b) (West 2000). Neither the Jones Act nor any other statute purports to

regulate procedure for demanding or waiving jury trial. Thus, section 2—1105 of the Code necessarily implies Jones Act defendants, like all tort litigants, have a right to a jury trial.

In *Stephens v. Kasten*, 383 Ill. 127 (1943), this court expressly recognized the right of defendants to a jury trial in a tort action seeking money damages. The court found an abuse of discretion in the trial court's failure to allow a late filing of a jury demand by defendants when good cause was shown for the delay, emphasizing the importance of protecting the "jealously guarded right of trial by jury." *Stephens*, 383 Ill. at 135. The court noted that the right to trial by jury has been guaranteed in Illinois since the state's organization and has been carried forward in each of our successive constitutions. *Stephens*, 383 Ill. at 132. The court accordingly reversed a substantial judgment for plaintiffs and remanded the cause for a new trial. *Stephens*, 383 Ill. at 135.

The *Stephens* court drew no distinction between a plaintiff's and a defendant's right to trial by jury, noting that section 5 of article II of the Illinois Constitution of 1870 "gives a *litigant* a right to a jury trial." (Emphasis added.) *Stephens*, 383 Ill. at 132. Hence, I conclude that absent an express provision in the Jones Act limiting the right of jury trial to plaintiffs, the right may be exercised by both plaintiffs and defendants, just as in other Illinois tort remedies, whether statutory or at common law. As the majority observes, common law negligence claims of injured seamen were tried by juries long before the adoption of the "as heretofore enjoyed" provision in the 1870 constitution. 217 Ill. 2d at 95-96. There is no basis to conclude that Jones Act claims should be treated differently than common law negligence actions in the application of section 2—1105 of the Code. Thus, I agree with the majority's holding, disagreeing only with a portion of its rationale.